UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------×
GEITCHING PIERRE,

                *Plaintiff*,

                *v*.

OT ASPEKT & CHIROPRACTIC PLLC d/b/a KIDS TIME THERAPIES,

                *Defendant*.
-------------------------------------------------------------------------×

16 CV 6721

**COMPLAINT**

Plaintiff Geitching Pierre, by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendant OT Aspekt & Chiropractic PLLC d/b/a Kids Time Therapies as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Geitching Pierre ("Plaintiff" or "Ms. Pierre") seeks damages and costs against Defendant OT Aspekt & Chiropractic PLLC, d/b/a Kids Time Therapies ("Defendant" or "OT Aspekt"), for terminating her employment in retaliation for her complaints about Defendant's overtime violations, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and the New York State Labor Law ("NYLL"), N.Y. Lab. Law § 215.

## JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendant violated Plaintiff's rights under the FLSA.

3. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims brought under the NYLL, as they are so related to the FLSA claims that they form part of the same case or controversy.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## TRIAL BY JURY

5. Plaintiff respectfully requests a trial before a jury.

## PARTIES

6. Plaintiff, at all times relevant hereto, was and is a resident of Nassau County in the State of New York.

7. Upon information and belief, at all times relevant hereto, Defendant was and is a professional service limited liability company organized under the laws of the State of New York, with offices located at 42-77 65th Place, Woodside, New York 11377 in Queens County.

## STATEMENT OF FACTS

8. Ms. Pierre was employed by OT Aspekt as a Billing Administrator from approximately January 5, 2015, to October 4, 2016.

9. Throughout her employment, Ms. Pierre was a dedicated and reliable employee who consistently fulfilled all of her job responsibilities.

10. From the beginning of her employment through August 14, 2016, OT Aspekt paid Ms. Pierre on a per-hour basis, starting at an hourly wage of twenty dollars ($20.00).

11. Ms. Pierre received a series of raises over the course of her employment with OT Aspekt, in recognition of her diligence and capability.

12. As a Billing Administrator, Ms. Pierre's primary job responsibility was processing medical billing and invoices.

13. Ms. Pierre had limited supervisory authority over the other employees in OT Aspekt's Billing Department, but did not have the ability to exercise independent judgment in matters of significance.

14. Ms. Pierre typically worked forty-five (45) hours in a work week, but frequently worked up to and over fifty (50) hours per week.

15. From her hire up through August 1, 2016, OT Aspekt paid Ms. Pierre at the overtime premium rate of one and a half (1.5) times her hourly rate for hours worked in excess of forty (40) in a work week.

16. On or about August 1, 2016, OT Aspekt changed its compensation structure so that Ms. Pierre would be paid an annual salary of fifty thousand dollars ($50,000.00), instead of being paid on an hourly basis.

17. The change in compensation structure did not result in any change in Ms. Pierre's job duties; she continued to spend the majority of her time processing invoices and had the same job responsibilities that she had had as an hourly employee.

18. On or about August 1, 2016, Ms. Pierre met with OT Aspekt's Director, Michael Markakis, and OT Aspekt's CEO, Anatoly Spektor, to discuss her compensation.

19. Mr. Markakis and Mr. Spektor told Ms. Pierre that, although she would now be paid an annual salary, she would still be compensated at the overtime premium rate for any overtime hours she worked.

20. When Ms. Pierre requested that this new compensation arrangement be confirmed in writing, Mr. Spektor told her, "Don't worry about it. We don't need that."

21. Ms. Pierre asked again, but Mr. Spektor refused again, stating that he "[had] a reason for not putting things on paper."

22. During Ms. Pierre's first week as a salaried employee, starting August 1, 2016, OT Aspekt requested that she work overtime.

23. Ms. Pierre confirmed with OT Aspekt that she would receive overtime pay for overtime worked, as they had discussed; she was assured that she would receive overtime pay.

24. In the week of August 1, 2016, through August 7, 2016, Ms. Pierre worked five (5) days of ten (10) hours per day, totaling a fifty (50) hour work week. As a result, Ms. Pierre worked ten (10) hours of overtime.

25. In the week of August 8, 2016, through August 14, 2016, Ms. Pierre worked four (4) days of approximately ten (10) hours per day, and used paid time off to cover a fifth day.

26. However, when Ms. Pierre received her paycheck for the pay period of August 1, 2016, through August 14, 2016, she discovered that these overtime hours were not reflected on her paycheck.

27. After Ms. Pierre noticed that her paycheck did not reflect her overtime hours worked, she complained to OT Aspekt's Human Resources ("HR") Department about the unpaid overtime and asked for the missing payment.

28. HR told Ms. Pierre that they would "look into" the matter.

29. On or about September 15, 2016, after Ms. Pierre again received a paycheck that did not reflect her earlier overtime, Ms. Pierre renewed her request to be paid overtime.

30. HR responded only, "There's nothing we can do about it."

31. On or about October 1, 2016, Ms. Pierre again received a paycheck that did not include the missing overtime, and once more renewed her request to be paid overtime.

32. On or about October 4, 2016, Ms. Pierre met with Mr. Spektor to discuss the matter of overtime.

33. Ms. Pierre complained to Mr. Spektor about OT Aspekt's failure to pay her overtime. She reminded Mr. Spektor of the agreement they had reached in August—that she would continue to receive overtime for hours worked in excess of forty (40) in a work week—and insisted that she be paid the overtime hours to which she was entitled for the weeks of August 1, 2016, and August 8, 2016.

34. In response, Mr. Spektor stated that Ms. Pierre was not entitled to overtime, and that, because of her reclassification as a salaried employee, she would not receive it, contradicting the agreement that OT Aspekt had made with Ms. Pierre about her compensation.

35. Ms. Pierre replied that Mr. Spektor's assertion was not true and did not reflect what they had agreed to when Ms. Pierre had become a salaried employee.

36. Mr. Spektor grew angry, threw Ms. Pierre out of his office, and told Mr. Markakis that Ms. Pierre had called him a "liar" and that she "[had] to go."

37. OT Aspekt then terminated Ms. Pierre's employment for "insubordination."

38. In fact, OT Aspekt terminated Ms. Pierre for complaining about OT Aspekt's failure to pay her overtime.

39. In or around early November 2016, approximately one month after Ms. Pierre's termination, OT Aspekt deposited the missing overtime payment into Ms. Pierre's bank account.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Retaliation in Violation of the FLSA

40. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 39 with the same force as though separately alleged herein.

41. The FLSA prohibits retaliation by an employer against an employee for complaining of practices made illegal under the FLSA.

42. Plaintiff properly complained to Defendant concerning its failure to compensate her for hours worked in excess of forty (40) in a work week at the overtime premium rate.

43. Defendant retaliated against Plaintiff by terminating her employment.

44. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continue to suffer, substantial economic damages.

45. Due to Defendant's retaliation, Plaintiff is entitled to recover back pay, front pay, liquidated damages, interest, and reasonable attorneys' fees and costs related to the action.

## SECOND CAUSE OF ACTION
### Retaliation in Violation of the NYLL § 215

46. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 45 with the same force as though separately alleged herein.

47. The NYLL prohibits retaliation by an employer against an employee for complaining of practices made illegal under the NYLL.

48. Plaintiff properly complained to Defendant about its failure to compensate her for hours worked in excess of forty (40) in a work week at the overtime premium rate.

49. Defendant retaliated against Plaintiff by terminating her employment.

50. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial economic damages.

51. Due to Defendant's retaliation, Plaintiff is entitled to recover back pay, front pay, liquidated damages, interest and reasonable attorneys' fees and costs related to the action.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial; and

C. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 5, 2016

By: *[signature]*

Walker G. Harman, Jr. [WH-8044]
Owen H. Laird [OL-6994]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
olaird@theharmanfirm.com

*Attorneys for Plaintiff*

7